1  Scott D. Cunningham (State Bar No.: 200413)
   Email: scunningham@condonlaw.com
2  Jennifer J. Johnston (State Bar No.: 125737)
   Email: jjohnston@condonlaw.com
3  Ivy L. Nowinski (State Bar No.: 268564)
   Email: inowinski@condonlaw.com
4  Grace M. Lau (State Bar No.: 312977)
   Email: glau@condonlaw.com
5  CONDON & FORSYTH LLP
   1901 Avenue of the Stars, Suite 850
6  Los Angeles, California 90067-6010
   Telephone: (310) 557-2030
7  Facsimile: (310) 557-1299

8  Attorneys for Defendant
   ALL NIPPON AIRWAYS CO., LTD.

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11

12
   ASHLEY BUGARIN, on behalf of herself and ) Case No.: 5:20-cv-03341-BLF
13 all others similarly situated,            )
                                             ) **DEFENDANT ALL NIPPON AIRWAYS**
14              Plaintiff,                    ) **CO. LTD.'S NOTICE OF MOTION AND**
                                             ) **MOTION TO DISMISS PLAINTIFF'S**
15         vs.                               ) **FIRST AMENDED COMPLAINT**
                                             ) **PURSUANT TO RULES 12(b)(1),**
16 ALL NIPPON AIRWAYS CO. LTD.,              ) **12(b)(2) AND 12 (b)(6) OF THE**
                                             ) **FEDERAL RULES OF CIVIL**
17              Defendant.                    ) **PROCEDURE**
                                             )
18                                           )  Date:        October 22, 2020
                                             )  Time:        9:00 a.m.
19                                           )  Courtroom:   3 - 5th Floor
                                             )  Judge:       Hon. Beth Labson
20                                           )               Freeman
                                             )
21                                           )
                                             )
22 _____ )

23         PLEASE TAKE NOTICE that on October 22, 2020, at 9:00 a.m., in Courtroom 3, Fifth

24 Floor of the above captioned court, located at 280 South 1st Street, San Jose, California, 95113,

25 defendant All Nippon Airways Co., Ltd., (hereinafter referred to as "ANA"), by and through its

26 attorneys of record, Condon & Forsyth LLP, will move this Court for an order dismissing

27 plaintiff Ashley Bugarin's (hereinafter referred to as "Plaintiff") First Amended Complaint

28 against ANA pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil

Procedure.

This motion will be based on this Notice of Motion, the Memorandum of Points and Authorities below, the Declaration of Mr. Yutaka Ito (hereinafter "Ito Decl.") and any oral argument presented at the hearing of this motion.

Dated: August 17, 2020                         CONDON & FORSYTH LLP


By:/s/ Scott D. Cunningham
    SCOTT D. CUNNINGHAM
    JENNIFER J. JOHNSTON
    IVY L. NOWINSKI
    GRACE M. LAU
    Attorneys for Defendant
    ALL NIPPON AIRWAYS CO., LTD.

1

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................iii-vii

INTRODUCTION ...........................................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ...............................................................2

STATEMENT OF RELEVANT FACTS .........................................................................3

    I.      PLAINTIFF'S TICKETING AND CLAIMS ......................................................3

    II.     ANA'S TICKETING AND REFUND POLICY ACCORDING TO ANA'S
            CONDITIONS OF CARRIAGE.............................................................................4

    III.    DOT GUIDELINES IN RESPONSE TO COVID-19 AND ANA'S
            COMPLIANCE........................................................................................................5

ARGUMENT ..................................................................................................................7

    I.      PLAINTIFF'S CLAIMS ARE NOT JUSTICIABLE PURSUANT TO
            ARTICLE III OF THE UNITED STATES CONSTITUTION AND
            SHOULD  BE DISMISSED PURSUANT TO RULE 12(B)(1) OF THE
            FEDERAL RULES OF CIVIL PROCEDURE .....................................................7

            A.      Plaintiff's FAC Cannot Establish Standing or Ripeness Where Pled Facts
                   are Insufficient to Allege ANA Breached Any Contractual Obligation to
                   Plaintiff ......................................................................................................8

            B.      ANA's Compliance With Its Own Conditions of Carriage and DOT
                   Guidelines in Response to COVID-19 Renders Claims of Putative
                   Class Members Moot ................................................................................10

    II.     PLAINTIFF HAS NOT PLED SUFFICIENT FACTS TO STATE A CLAIM
            FOR RELIEF PURSUANT TO RULE 12(B)(6) OF THE FEDERAL RULES
            OF CIVIL PROCEDURE .....................................................................................11

             A.      Plaintiff's Claims are Related to ANA's Rates and Services and
                   Therefore are Preempted by the Airline Deregulation Act ......................12

            B.      Plaintiff Has Failed to Plead That She Satisfied a Mandatory
                   Condition Precedent to Receipt of a Refund.............................................15

             C.      Plaintiff Is Not Entitled to the Remedy of Rescission As
                   a Matter of Law.........................................................................................16

                 1.      ANA's Cancellation of Plaintiff's Return Flight Does Not
                         Constitute Failure of Consideration.................................................17

                 2.      Plaintiff Cannot Contravene Express Terms of ANA's
                          Conditions of Carriage by Attempting to Rescind the Contract ....18

                 3.      The FAC Pleads No Facts Substantiating Its Claim that ANA's
                          Conditions of Carriage was Rendered Unlawful .............................19

4.    Plaintiff Cannot Recover Both Damages And a Restitutionary Remedy For the Same Alleged Injury ...........................................20

III.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER ANA PURSUANT TO RULE 12(B)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE ....................................................20

A.    Plaintiff's FAC Fails to Allege Any Facts Establishing Specific Jurisdiction over ANA in California...........................................................21

B.    ANA Is Domiciled and Maintains Its Principal Place of Business in Japan and Plaintiff has Failed to Establish that ANA's Contacts in California are Pervasive Enough to Establish General Jurisdiction ..........23

CONCLUSION ........................................................................................................24

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Abbot Laboratories v. Gardner*,
5
    387 U.S. 136 (1967)................................................................................9

6

*Agher v. Envoy Air Inc.*,
7
    2018 WL 6444888 (C.D. Cal. 2018)..............................................23, 24

*Alder v. Drudis*,
8
    30 Cal.2d 372 (Cal. 1947)........................................................................16

9

*All World Professional Travel Services, Inc. v. American Airlines, Inc.*,
10
    282 F. Supp. 2d 1161 (C.D. Cal. 2003) ................................................12

11

*Ambassador Hotel Co., Ltd. v. Wei-Chuan Investment*,
12
    189 F.3d 1017 (9th Cir. 1999) ................................................................16

13

*American Airlines, Inc. v. Wolens*,
    513 U.S. 219 (1995)..........................................................................13, 14

14

*Ashcroft v. Iqbal*,
15
    556 U.S. 662 (2009)................................................................................12

16

*Banks v. American Airlines*,
    2019 WL 5579479 (N.D. Cal. 2019) ....................................................23

17

*Baypoint Mortgage Corp. v. Crest Premium Real Estate etc. Trust*,
18
    168 Cal.App.3d 818 (2d Dist. 1985)......................................................18

19

*Bell Atl. Corp. v. Twombly*,
20
    550 U.S. 544 (2007)................................................................................12

21

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,
    137 S. Ct. 1773 (2017)................................................................20, 21, 22

22

*Buck v. American Airlines, Inc.*,
23
    476 F.3d 29 (1st Cir. 2007)......................................................................14

24

*Burnham v. Sup. Ct.*,
    495 U.S. 604 (1990)................................................................................20

25

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
26
    824 F.3d 1156 (9th Cir. 2016) ................................................................11

27

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
28
    598 F.3d 1115 (9th Cir. 2010) ..................................................................7

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

*City of Stockton v. Stockton Plaza Corp.*,
   261 Cal.App.2d 639 (1968) ..................................................................................18

*Clinton v. Acequia, Inc.*,
   94 F.3d 568 (9th Cir. 1996) ...................................................................................9

*Colwell v. Dep't of Health & Human Servs.*,
   558 F.3d 1112 (9th Cir. 2009) ...............................................................................8

*Consolidated World Investments Inc. v. Lido Preferred Ltd.*,
   9 Cal. App.4th 373 (Cal. Ct. App. 1992) .............................................................15

*Crofoot Lumber Inc. v. Thompson*,
   163 Cal.App.2d 324 (1958) ..................................................................................20

*Daimler A.G. v. Bauman*,
   571 U.S. 117 (2014).................................................................................2, 20, 23

*Data Disc, Inc. v. Systems Tech, Assocs. Inc.*,
   557 F.2d 1280 (9th Cir. 1977) .............................................................................21

*Egan v. Kollsman Instrument Corp.*,
   253 N.Y.S.2d 679 (1964) .....................................................................................18

*FPI Development, Inc. v. Nakashima*,
   231 Cal.App.3d 367 (1991) ..................................................................................17

*Freestream Aircraft Ltd. v. Aero Law Group*,
   905 F.3d 597 (9th Cir. 2018) ...............................................................................21

*GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*,
   650 F.3d 1257 (9th Cir. 2011) .............................................................................11

*Glenn R. Sewell Sheet Metal, Inc. v. Loverde*,
   70 Cal.2d 666 (Cal. 1969) ....................................................................................17

*Gold v. Salem Lutheran Home Ass'n of Bay Cities*,
   53 Cal.2d 289 (1959) ............................................................................................18

*Golden v. California Emergency Physicians Med. Group*,
   782 F.3d 1083 (9th Cir. 2015) .............................................................................10

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) .............................................................................21

*Helzel v. Superior Court*,
   123 Cal. App. 3d 652 (Cal. Ct. App. 1981) .........................................................15

*Hingson v. Pacific Southwest Airlines*,
   743 F.2d 1408 (9th Cir. 1984) .............................................................................12

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

*Howell v. Alaska Airlines, Inc.*
   99 Wash. App. 646 (Wash. App. 2000) ................................................................. 13

*Ill. Corp. Travel, Inc. v. Am. Airlines, Inc.*,
   889 F.2d 751 (7th Cir. 1989) ................................................................................. 12

*International Shoe Co. v. State of Wash., Office of Unemployment Compensation
   and Placement et. al.*,
   326 U.S. 310 (1945) .............................................................................................. 20

*Johnson v. Cala Stevens Creek/Monroe, LLC*,
   401 F.Supp. 3d 904 (N.D. Cal. 2019) ................................................................... 11

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994) ................................................................................................ 7

*Lee v. City of Los Angeles*,
   250 F. 3d 668 (9th Cir. 2001) ............................................................................ 6, 12

*Lloyd v. Murphy*,
   25 Cal.2d 48 (Cal. 1944) ....................................................................................... 17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................. 8

*Montana Envtl. Info. Ctr. v. Stone-Manning*,
   766 F.3d 1184 (9th Cir. 2014) ................................................................................ 8

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) .............................................................................................. 12

*Northwest, Inc. v. Ginsberg*,
   572 U.S. 273 (2014) ......................................................................................... 13, 14

*Robinson v. Am. Airlines, Inc.*,
   743 F. App'x 233 (10th Cir. 2018) ....................................................................... 10

*Romano v. Rockwell Intl'l*,
   14 Cal. 4th 479 (1996) .......................................................................................... 10

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ................................................................................ 7

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir.1990) ............................................................................... 22

*Spencer v. Kemna*,
   523 U.S. 1 (1998) .................................................................................................. 11

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................................................ 8

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

*Statland v. American Airlines, Inc.*
  998 F.2d 539 (7th Cir. 1993) ........................................................................................13

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ....................................................................................8, 9

*Taliaferro v. Davis*,
  216 Cal.App.2d 398 (1st Dist 1963) ..............................................................................17

*Watson v. United Airlines*,
  CIVIL 16-00400 LEK-KJM, 2017 WL 6060173 (D.Haw. Apr. 4, 2017) ..........................14

*In re Western States Wholesale Natural Gas Antitrust Litigation*,
  715 F.3d 716 (9th Cir. 2013) ........................................................................................21

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) .........................................................................................7

*Workers v. Mitchell*,
  330 U.S. 75 (1947) .............................................................................................................9

*World–Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980) ........................................................................................................21

**Statutes**

Fed. R. Civ. P. 12(b)(1) (West 2020) .................................................................2, 7, 11

Fed. R. Civ. P. 12(b)(2) (West 2020) ....................................................2, 20, 21, 24

Fed. R. Civ. P. 12(b)(6) (West 2020) .............................................2, 11, 14, 17, 19

Fed. R. Evid. 201 (West 2020) ...............................................................................6

14 CFR § 259.5(b)(5) .............................................................................1, 11, 16

14 CFR § 399.80(1) ...................................................................................................6

49 U.S.C. § 1305 ....................................................................................................12

49 U.S.C. § 41712 ....................................................................................................5

49 U.S.C. § 41713 ............................................................................................*passim*

U.S.C.A. Const. Art. 3, § 2, cl. 1 (West 2020) ...........................................1, 2, 7, 8

Cal. Civ. Code § 1436 (West 2020) .......................................................................15

Cal. Civ. Code § 1657 (West 2020) .......................................................................18

Cal. Civ. Code § 1689 (b) (West 2020) ...........................................................17, 19

Condon & Forsyth LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

**Other Authorities**

*See Enforcement Notice Regarding Refunds by Carriers Give the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel ("DOT Notice")*, https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final% 20April %203%202020.pdf. (last accessed August 17, 2020)............................................................................5

*Frequently Asked Questions Regarding Airline Ticket Refunds Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel*, https://www.transportation.gov/sites/dot.gov/files/2020-05/Refunds-%20Second%20Enforcement%20Notice%20FINAL%20%28May%2012%20 2020%29.pdf (last accessed August 17, 2020) ............................................................ *passim*

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1
2
3
4
5
6
7
8
9
10
11
12

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### MEMORANDUM OF POINTS AND AUTHORITIES

### <u>INTRODUCTION</u>

In response to ANA's Motion to Dismiss her Original Complaint, Plaintiff has filed a First Amended Complaint ("FAC") for this putative class action in which she claims that ANA failed to provide a refund for a flight that was canceled in response to the COVID-19 pandemic. Plaintiffs' FAC omits many of the causes of action ANA originally challenged, leaving only a cause of action for breach of contract. Plaintiff also now seeks the remedy of rescission of the contract. The major distinction between the original Complaint and the FAC is that the FAC alleges that ANA's Conditions of Carriage incorporate the enforcement notices published by the United States Department of Transportation ("DOT") that require airlines to provide prompt refunds and ANA's failure to do so was a breach of the Conditions of Carriage. Plaintiff claims that ANA was required to provide her with an automatic refund upon the cancellation of her flight. However, Plaintiff still fails to plead that she satisfied the requirements of Article 13 of ANA's Conditions of Carriage, which requires that Plaintiff submit a request for a refund and supporting documentation. Pursuant to the Conditions of Carriage, this is an explicit condition precedent to receipt of a refund pursuant to ANA's Conditions of Carriage. Accordingly, Plaintiff fails to state a claim for breach of contract. Furthermore, her action is premature, as she has not suffered an injury-in-fact and will not unless ANA denies her a refund for her flight. Accordingly, her claims fail for lack of standing and ripeness under Article III, Section 2 of the United States Constitution.

It is ANA's policy to refund tickets for flights canceled in response to COVID-19 within seven days of receiving a passenger's request for a refund, in compliance with all guidance issued by the DOT. ANA has instructed its authorized travel agents to do the same. ANA has acted at all times in compliance with the enforcement notices published by the DOT, the DOT Frequently Asked Questions, 14 C.F.R. § 259.5(b)(5), and ANA's Conditions of Carriage. As of July 20, 2020, ANA has processed 78,770 refunds of tickets issued in the United States for flights canceled due to the COVID-19 pandemic. Because ANA has actively been providing refunds to passengers when requested pursuant to its refund policy, the claims of the putative

1   class members are undeniably moot.

2       The FAC also fails to state a claim against ANA because Plaintiff's state law cause of

3   action for breach of contract is preempted by the Airline Deregulation Act of 1978, 49 U.S.C. §

4   41713(b) ("ADA"), which prohibits States from enforcing any state common law or statutes

5   relating to rates, routes or services of any carrier.  Ticket refunds are a service that ANA

6   provides to all passengers that directly affects the price of ANA tickets. The FAC essentially

7   requests the Court to expand ANA's contractual obligations to require ANA to provide refunds

8   automatically to passengers, without any proof of purchase, refund request or contact with ANA

9   whatsoever—a substantial change in ANA's refund policy which would impact ANA's rates and

10  services.  Therefore, Plaintiff's claims are preempted by the ADA.

11      Even if Plaintiff could state a claim for relief against ANA, this Court lacks personal

12  jurisdiction over ANA.  Plaintiff did not plead any facts to indicate her action arises out of or

13  relates to ANA's contacts in California or any facts to demonstrate that ANA conducts

14  substantial business in California such that ANA could be deemed "at home" here so as to satisfy

15  the standard for general personal jurisdiction set forth by the United States Supreme Court in

16  *Daimler A.G. v. Bauman*, 571 U.S. 117 (2014).  Plaintiff has failed to plead facts sufficient to

17  establish that this Court may exercise personal jurisdiction over ANA in connection with her

18  claims, much less over those of the putative class members.

19      As such, ANA moves for an order pursuant to Rule 12(b)(1), (2) and (6), dismissing the

20  FAC in its entirety.

## STATEMENT OF ISSUES TO BE DECIDED

22      The first issue to be decided by way of this motion is whether Plaintiff has established

23  facts sufficient to satisfy the case and controversy requirement under Article III, Section 2 of the

24  U.S. Constitution.

25      The second issue to be decided by way of this motion is whether Plaintiff's action is

26  preempted by the Airline Deregulation Act and whether Plaintiff has stated facts sufficient to

27  allege a state law claim for breach of contract.

28      The third issue to be decided by way of this motion is whether Plaintiff has established

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1   whether this Court has personal jurisdiction over ANA in California.

2   <u>**STATEMENT OF RELEVANT FACTS**</u>

3   **I.   PLAINTIFF'S TICKETING AND CLAIMS**

4   On or around November 2019, Plaintiff purchased passenger tickets through online travel

5   agent ASAP for ANA flights from San Jose, California, to Tokyo, Japan, on March 23, 2020,

6   and from Tokyo to San Francisco, California, on April 8, 2020.  (FAC, ECF No. 15, ¶ 19).

7   Plaintiff's departing flight was operated by ANA as scheduled.  (Ito Decl. ¶ 24).  Plaintiff did not

8   travel on board this flight or otherwise cancel her flight reservation prior to departure.  (Ito Decl.

9   ¶¶ 24-25).  On or around April 2020, Plaintiff's return flight from Tokyo to San Francisco was

10  canceled in response to the COVID-19 pandemic.  (FAC, ECF No. 15, ¶ 19).  Thereafter,

11  Plaintiff alleges that she called ANA "several times" to request a refund for the cancelled portion

12  of her trip, but never spoke with an ANA representative.  *Id*.  ANA has no record of Plaintiff

13  requesting a refund online or contacting ANA in any way.  (Ito Decl. ¶¶ 25-26).  The DOT's

14  Frequently Asked Questions, published on May 12, 2020, discussed below, state that passengers

15  who purchased passenger tickets through online ticket agents should seek refunds from such

16  ticket agents.  *See* FAQs, No. 2.  Neither Plaintiff's original Complaint nor the FAC indicate

17  whether Plaintiff contacted ASAP for a refund of her passenger tickets.  Plaintiff has not named

18  ASAP as a defendant in this lawsuit.

19  On May 15, 2020, Plaintiff filed a class action lawsuit against ANA, only, for: (1) unjust

20  enrichment, (2) conversion, (3) breach of contract, (4) money had and received, and (5) violation

21  of California's Unfair Competition law.  ANA filed a Motion to Dismiss all claims on July 20,

22  2020.  In response to ANA's Motion to Dismiss, Plaintiff filed the FAC which omitted many of

23  her original claims and alleges causes of action for breach of contract and rescission.[1]  In

24  Plaintiff's original Complaint and the FAC, all causes of action alleged by Plaintiff arise out of

25  the claim that ANA breached its Conditions of Carriage and DOT guidelines by failing to

26

27  [1] Though Plaintiff continues to allege she purchased the tickets from ASAP, she does not allege
    that she sought refunds from ASAP and ASAP has not been joined as a party to this action.  It is
    possible that this is because ASAP's terms and conditions require binding arbitration as the
28  exclusive means of resolving any dispute or claim against Asaptickets.com.  *See*
    https://asaptickets.com/customer-service/rules-conditions (last accessed August 17, 2020).

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1  provide Plaintiff a refund for her cancelled flight.

2  **II.    ANA'S TICKETING AND REFUND POLICY ACCORDING TO ANA'S CONDITIONS OF CARRIAGE**

3

4         ANA is a corporation organized under the laws of Japan with its principal place of

5  business in Tokyo, Japan.  (Ito Decl. ¶ 4).  As an international carrier, prior to the COVID-19

6  pandemic, ANA operated 118 domestic routes in Japan and 78 routes internationally.  (Ito Decl.

7  ¶ 6).  Of these 196 routes that ANA operated, only five routes traveled to or from destinations in

8  California.  *Id*.

9         Individual customers in the United States seeking to purchase tickets for ANA flights

10  generally do so by purchasing tickets directly from ANA, through authorized agents that contract

11  with ANA, or through agents unaffiliated with ANA who work with ANA's authorized agents.

12  (Ito Decl. ¶ 10).  ASAP is not an authorized ticket agent of ANA.  (Ito Decl. ¶ 11).  ANA does

13  not have a contract with ASAP authorizing ASAP to sell tickets on ANA's behalf.  *Id*.  ASAP

14  obtained Plaintiff's tickets for travel on ANA flights from Downtown Travel, a separate ANA-

15  authorized agent based in New York, and then sold the tickets to Plaintiff.  (*See* Ito Decl. ¶¶ 17-

16  19).  ANA's refund policy is outlined in Article 13 of its Conditions of Carriage.  (*See* ANA's

17  Conditions of Carriage, Exhibit B to Ito Decl.).  Article 13(A) provides for voluntary and

18  involuntary refunds.  *Id*.  Article 13(C) defines involuntary refunds as "any refund made when a

19  Passenger is prevented from using the Carriage provided in his/her ticket resulting from [when]

20  ANA cancels the flight . . . and the amount of the refund shall be . . . if no portion of the trip has

21  been made, an amount equal to the fare paid."  *Id*.  Article 13(B)(1) states, "ANA will make a

22  refund to the person named in a Ticket or, to the person who purchased the Ticket *upon*

23  *presentation to ANA of satisfactory evidence* that he/she is entitled by these Conditions of

24  Carriage to such refund."  *Id*. (*emphasis added*).  Article 13(B)(3) elaborates: "ANA will make a

25  refund only if all unused Flight Coupons and a Passenger Coupon or Passenger Receipt (or, in

26  the case of an Electronic Ticket, the itinerary/Receipt) are surrendered to ANA."  *Id*.  ANA's

27  refund procedure for cancellations due to irregularities outside of ANA's control is outlined on

28

ANA's website.[2]  ANA has also published an additional page[3] outlining the procedure for refunds specifically due to COVID-19.  At all times relevant to this claim, both websites stated that customers seeking refunds of tickets purchased through a travel agency should contact such agencies prior to contacting ANA for a refund, which comports with the DOT guidelines discussed *infra* at Section III.  (Ito Decl. ¶ 22, 27).  ANA has instructed its authorized travel agents to issue refunds in accordance with its refund policy and, where ANA is in receipt of the travel funds, has agreed to reimburse its authorized travel agents for these refunds.  (Ito Decl. ¶ 23).

### III.    DOT GUIDELINES IN RESPONSE TO COVID-19 AND ANA'S COMPLIANCE

On April 3, 2020, in response to a high volume of complaints regarding cancelled flights as a result of COVID-19, the DOT released a Notice stating the Aviation Enforcement Office would view any contract of carriage or airline policy that denied refunds to passengers following cancellation of a flight as a violation of the carrier's obligation that could be subject to an enforcement action.  *See Enforcement Notice Regarding Refunds by Carriers Give the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel ("DOT Notice")*, https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final% 20April %203%202020.pdf. (last accessed August 17, 2020).

On May 12, 2020, the DOT clarified its views in its published Frequently Asked Questions, which stated that the Aviation Enforcement Office would focus its enforcement actions on instances where carriers disregarded the requirement to offer refunds, failed to honor its refund policies, or its refund policies were deemed "unfair or deceptive" under 49 U.S.C. § 41712.  *See Frequently Asked Questions Regarding Airline Ticket Refunds Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel* ("FAQs"), https://www.transportation.gov/sites/dot.gov/files/2020-05/Refunds-

---

[2] *See* https://www.ana.co.jp/en/id/serviceinfo/international/information/refund2.html (last accessed August 17, 2020).

[3] *See* https://www.ana.co.jp/en/jp/topics/notice200123/ (last accessed August 17, 2020).

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1   %20Second%20Enforcement%20Notice%20FINAL%20%28May%2012%202020%29.pdf (last

2   accessed August 17, 2020).  The DOT clarified that where passengers purchased airline tickets

3   from online travel agencies, such agencies were required to make the proper refunds if flight

4   service could not be performed as contracted pursuant to 14 CFR § 399.80(1).  FAQs, No. 3.  In

5   addition, the FAQs explained that the prior Notice was intended to provide guidance and did not

6   have "the force and effect of law and is not meant to bind the regulated entities in any way."  *Id.*

7   at ¶ 2.  ANA respectfully requests that this Court take judicial notice of the DOT Notice and

8   FAQs pursuant to Rule 201 of the Federal Rules of Evidence.  The Court may take judicial

9   notice of these guidelines as they are issued by a government entity and are a matter of public

10  record, and the contents of the document cannot reasonably be questioned or disputed.  *Lee v.*

11  *City of Los Angeles*, 250 F. 3d 668, 689 (9th Cir. 2001).  The documents are furthermore the

12  subject of allegations in Plaintiff's FAC and can be considered by the Court here.  *Id.*

13         Notably, both the DOT Notice and the FAQs acknowledge the unprecedented nature of

14  the COVID-19 pandemic and the significant volume of refund requests resulting therefrom.  The

15  DOT indicated that it would use its discretion and not take action against airlines "if, under the

16  totality of the circumstances, they are making good faith efforts to provide refunds in a timely

17  manner."  *See* FAQs, No. 6.  In the wake of the COVID-19 pandemic, it has been ANA's

18  practice to send cancellation notices with refund instructions via email to all passengers who

19  have purchased tickets directly from ANA.  (Ito Decl. ¶ 27).  Where bookings have been made

20  through an agent, a similar cancellation notice is provided to the travel agency so that they can

21  contact the passenger.  *Id.*  In compliance with the DOT Notice and FAQs, ANA has consistently

22  provided refunds to passengers with tickets issued in the United States within seven days of

23  receiving refund requests and instructed its authorized travel agents to do the same.  ANA has

24  processed at least 78,770 refunds of U.S. issued tickets prior to the filing of this motion.  (Ito

25  Decl. ¶ 29).

26  / /

27  / /

28  / /

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1

## <u>ARGUMENT</u>

2

**I.   PLAINTIFF'S CLAIMS ARE NOT JUSTICIABLE PURSUANT TO ARTICLE III OF THE UNITED STATES CONSTITUTION AND SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

3

4

5

Federal subject matter jurisdiction is limited to actual cases and controversies.  *U.S.C.A.*

6

*Const. Art. 3, § 2, cl. 1.*  The party asserting subject matter jurisdiction bears the burden of

7

proving its existence.  *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994).

8

Accordingly, where a plaintiff fails to demonstrate standing or that the asserted claims are ripe

9

for adjudication and not moot, a Rule 12(b)(1) motion to dismiss is appropriate.  *Chandler v.*

10

*State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  When evaluating a Rule

11

12(b)(1) motion, the court must evaluate whether the challenge is facial or factual.  *White v. Lee*,

12

227 F.3d 1214, 1242 (9th Cir. 2000).  If the challenge is a facial attack, the court must evaluate

13

the motion on the basis of the allegations in the complaint and judicially noticed facts in the light

14

most favorable to the plaintiff.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir.

15

2004).  However, because a factual challenge attacks allegations underlying the assertion of

16

jurisdiction, in such instances, the Court may consider competing facts and evidence without

17

converting the motion to dismiss into a motion for summary judgment.  *Id*.

18

Plaintiff's claims are based upon the allegation that ANA breached its contract with

19

Plaintiff when it failed to provide her with a refund for her cancelled flight pursuant to ANA's

20

Conditions of Carriage.  Specifically, Plaintiff cited provisions of ANA's Conditions of Carriage

21

stating ANA will act in accordance with Applicable Laws, defined as "such laws, cabinet orders

22

and ministerial ordinances and other government regulations, rules orders, demands or

23

requirements" and alleges that ANA breached its contract by failing to abide by the DOT

24

enforcement notices which qualify as "Applicable Laws."[4]  (FAC, ECF No. 15, ¶ 14).  Just as

25

with Plaintiff's original Complaint, the FAC artfully omits the provision of the Conditions of

26

27

28

---

[4] Plaintiff fails to explain how the DOT enforcement notices constitute "Applicable Laws," or how the DOT enforcement notices are incorporated into a contract that was entered into many months before the DOT enforcement issues were even issued.  Thus, these are merely conclusory allegations.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1    Carriage that clearly states that ANA requires a request for a refund and documentation from a

2    passenger prior to disbursing a refund.  (*See* Conditions of Carriage Article 13(B), Exhibit B to

3    Ito Decl.).  The DOT enforcement notices do not indicate that such requirement prior to

4    disbursement of prompt refunds is unreasonable, unlawful or otherwise prohibited.

5        The FAC fails to allege that Plaintiff submitted any request for a refund to ANA or the

6    travel agent that issued the ticket or that she provided the requisite documentation to ANA or the

7    travel agent that issued the ticket.  As such, Plaintiff's claim that she has sustained an injury is

8    speculative because she has failed to allege that she fulfilled a mandatory condition precedent to

9    the issuance of a refund under the explicit terms of the Conditions of Carriage.  Without an

10   injury in fact, Plaintiff lacks standing and all claims based upon this breach of contract theory are

11   unripe for litigation.  Furthermore, because ANA has provided prompt refunds within seven days

12   of receipt of refund requests and proofs of ticket purchase and has instructed its authorized

13   agents to do the same, claims of putative class members are undeniably moot.

14       A.    **Plaintiff's FAC Cannot Establish Standing or Ripeness Where Pled Facts are
                Insufficient to Allege ANA Breached Any Contractual Obligation to Plaintiff**

15       The irreducible minimum of Article III standing consists of three elements: the plaintiff

16   must have: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

17   the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  *Lujan v.*

18   *Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  To establish injury in fact required for Article

19   III standing, a plaintiff must show that he or she suffered an invasion of a legally protected

20   interest that is concrete and particularized and actual or imminent, not conjectural or

21   hypothetical.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).  Concreteness requires a *de*

22   *facto*, or existing, injury.  *Id.* at 1547.  An injury is imminent if the threatened injury is "certainly

23   impending, or if there is a substantial risk that the harm will occur."  *Montana Envtl. Info. Ctr. v.*

24   *Stone-Manning*, 766 F.3d 1184, 1189 (9th Cir. 2014).

25       Whereas standing is concerned with whether a plaintiff is the proper party to litigate the

26   matter, ripeness addresses when the litigation may occur.  *Stormans, Inc. v. Selecky*, 586 F.3d

27   1109, 1122 (9th Cir. 2009).  There are two types of ripeness: (1) constitutional and (2)

28   prudential.  *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1123 (9th Cir. 2009).

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1    Constitutional ripeness squarely coincides with the injury-in-fact prong of the standing analysis

2    and requires plaintiffs to present "concrete legal issues, presented in actual cases, not

3    abstractions." *Workers v. Mitchell,* 330 U.S. 75, 89 (1947); s*ee also Stormans*, 586 F.3d at 1122.

4    Prudential ripeness requires courts to evaluate the fitness of the issues for judicial decision

5    without further factual development and the hardship to the parties of withholding court

6    consideration. *Abbot Laboratories v. Gardner,* 387 U.S. 136, 149 (1967).  A case is not ripe

7    "where the plaintiff has not yet suffered an immediate and certain injury because the underlying

8    dispute hangs on future contingencies that may or may not occur." *Clinton v. Acequia, Inc.*, 94

9    F.3d 568, 571, 572 (9th Cir. 1996).

10       Here, Plaintiff claims that she sustained an injury-in-fact when ANA did not provide a

11   refund to Plaintiff for her cancelled flight.  (FAC, ECF No. 15, ¶¶ 11, 44).  However, Plaintiff's

12   alleged loss of ticket funds cannot be characterized as an actual or imminent injury because

13   Plaintiff has not pleaded that she requested a refund from ANA or her travel agent, ASAP.  ANA

14   has no record of Plaintiff submitting an online request through ANA's website or telephonic

15   request through ANA's customer service line.  (Ito Decl. ¶¶ 25-26).  The FAC affirmatively

16   alleges that she never spoke to an ANA representative.  (FAC, ECF No. 15, ¶ 19).  When ANA

17   receives requests for refunds and proof of ticket purchase from passengers whose flights have

18   been canceled in connection with the COVID-19 pandemic, it is ANA's practice to provide

19   prompt refunds within seven days, in line with the DOT's guidance.  (Ito Decl. ¶ 27).  ANA has

20   instructed its travel agents to do the same.  (Ito Decl. ¶ 23).  Because Plaintiff has not been in

21   contact with ANA to request a refund and has not alleged that she has contacted her travel agent

22   and been denied a refund, Plaintiff's injury is hypothetical unless and until ANA denies

23   Plaintiff's request and fails to provide a refund.  Since ANA has been actively providing refunds,

24   there is no substantial risk that this injury will occur.  Therefore, Plaintiff's claims against ANA

25   fail for lack of standing.

26       For similar reasons, Plaintiff's claims are not constitutionally ripe for adjudication.  In

27   order for her breach of contract claim to be ripe, Plaintiff's contract with ANA, based upon

28   ANA's Conditions of Carriage, which constitutes the contract between ANA and its passengers

1   (*see Robinson v. Am. Airlines, Inc.*, 743 F. App'x 233, 235 (10th Cir. 2018), *cert. denied*, 139 S.

2   Ct. 843, 202 L. Ed. 2d 582 (2019)), must have already been breached.  *See Romano v. Rockwell*

3   *Intl'l*, 14 Cal. 4th 479, 488 (1996) (holding that a claim for breach of contract does not accrue

4   before the time of breach).  Article 13(B) of ANA's Conditions of Carriage explicitly states that

5   refunds are provided "upon presentation to ANA of satisfactory evidence that he/she is entitled

6   by these Conditions of Carriage to such refund."  (*See* ANA's Conditions of Carriage, Exh. B to

7   Ito Decl.).  ANA is under no obligation by the DOT guidelines or otherwise, to issue refunds in

8   an automatic fashion or prior to the receipt of satisfactory evidence under Article 13(B).

9   Therefore, Plaintiff's breach of contract claim is constitutionally unripe, as it is based on the

10   future contingency that ANA or Plaintiff's travel agent will not refund Plaintiff's payment at any

11   point in the future following submission of a request and evidence of her ticket purchase.

12        Prudential ripeness does not apply here.  The Ninth Circuit has acknowledged that the

13   prudential ripeness doctrine was created to avoid premature court interference in the business of

14   administrative agencies and has declined to extend the doctrine to apply in cases involving

15   private contracts.  *Golden v. California Emergency Physicians Med. Group*, 782 F.3d 1083, 1087

16   (9th Cir. 2015).  ANA is not an administrative agency and Plaintiff's state law claims are based

17   upon ANA's contractual obligations to provide refunds under its Conditions of Carriage.  To the

18   extent Plaintiff contends her claims seek pre-enforcement of DOT policies mandating refunds,

19   enforcement is solely at the discretion of the Aviation Enforcement Office and neither the DOT

20   Notice nor the FAQs affords Plaintiff a private right of action to enforce DOT policies.

21   Furthermore, the FAQs plainly state that both the Notice and FAQs were not intended to have

22   "the force and effect of law" and were not meant to bind airlines in any way.  *See* FAQs, No. 1.

23   In any event, ANA's refund policy is in line with both the DOT Notice and FAQs, as ANA has

24   not failed to honor its refund policy or disregarded its obligation to offer refunds following

25   cancellation of flights.  (Ito Decl. ¶¶ 27-29).

26       **B.**    **ANA's Compliance With Its Own Conditions of Carriage and DOT**
        **Guidelines in Response to COVID-19 Renders Claims of Putative Class**

27           **Members Moot**

28        ANA has actively provided refunds within seven days when requested by passengers in

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

accordance with its Conditions of Carriage and its refund policy posted on its website.  ANA has instructed its authorized agents to do the same.  Accordingly, any claims by putative class members for denial of refund claims are moot.  Mootness deprives a court of jurisdiction over an issue.  *Johnson v. Cala Stevens Creek/Monroe, LLC,* 401 F.Supp. 3d 904, 909 (N.D. Cal. 2019).  A case is moot when there is nothing for the court to remedy, even if it were inclined to provide one.  *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).  A case can "become moot" when "an opposing party has agreed to everything the other party has demanded."  *GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.,* 650 F.3d 1257, 1267 (9th Cir. 2011).

ANA has complied with the DOT Notice, FAQs and 14 CFR § 259.5(b)(5)[5] and, at the time of the alleged incident, had in place and adhered to its refund policy that provided prompt refunds when requested by passengers who have provided documentation of the purchase of their tickets for the cancelled flight, and has instructed its authorized travel agents to do the same.  (Ito Decl. ¶ 28).  Article 13 of ANA's Conditions of Carriage require the refund to be "in the amount equal to the fare paid," which is what is demanded by the members of the class.  (*See* Conditions of Carriage, Exh. B to Ito Decl.).  Prior to filing this motion, at least 78,770 refunds of U.S issued tickets have been processed.  (Ito Decl. ¶ 29).  This demonstrates ANA's compliance with both its contractual obligations and is in line with DOT regulations.  Accordingly, Plaintiff's claims and the claims of the putative class are moot and there is no basis for Plaintiff's class action.

## II.   PLAINTIFF HAS NOT PLED SUFFICIENT FACTS TO STATE A CLAIM FOR RELIEF PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 12(b)(6) dismissal is proper where a complaint fails to allege sufficient facts "to support a cognizable legal theory."  *Caltex Plastics, Inc. v. Lockheed Martin Corp*., 824 F.3d 1156, 1159 (9th Cir. 2016).  In contrast to the evidence standard in evaluating Rule 12(b)(1) and (2) motions, the court must accept all of the factual allegations in the complaint and view facts in

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

---

[5] The FAC has alleged that the DOT Notice and FAQs are not "merely guidance documents" because they are based on provisions of the Code of Federal Regulations cited in the FAQs. (FAC, ECF No. 15, ¶ 5). However, 14 CFR § 259.5(b)(5) is the only regulation cited in the FAQs that discusses an air carrier's obligation to provide a refund.

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

the light most favorable to plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

However, courts are not bound to accept as true allegations that are legal conclusions, even if

cast in the form of factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  A court may

also consider "material which is properly submitted as part of the complaint" on a motion to

dismiss.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  If the documents are not

physically attached to the complaint, they may be considered if authenticity of the documents is

not contested and the plaintiff's complaint relies on the document.  *Id.*  Here, ANA's Conditions

of Carriage may be considered by the Court in connection with ANA's motion to dismiss

because Plaintiff's Complaint incorporates and relies on the document.  (FAC, ECF No. 15, ¶

13).

### A.   Plaintiff's Claims are Related to ANA's Rates and Services and Therefore are Preempted by the Airline Deregulation Act

The Airline Deregulation Act (ADA), 49 U.S.C. § 1305 (*reenacted at* 49 U.S.C. § 41713)

was enacted by Congress in 1978 to deregulate the airline industry.  In doing so, Congress' intent

was to help ensure transportation rates, routes and services that reflect "maximum reliance on

competitive market forces," thereby stimulating "efficiency, innovation and low prices," as well

as "variety and quality…of air transportation services." *Morales v. Trans World Airlines, Inc.*,

504 U.S. 374, 378 (1992).  To that end, a preemption provision was included in the ADA that

prohibited "states from enforcing any law '*relating to rates*, *routes or services*' of any air

carrier." *Id.* at 378-389 (*emphasis added*).  The purpose of the preemption provision is "to ensure

that the States would not undo federal deregulation with regulation of their own."  *Id.*

Explaining the ADA's phrase "relating to rates, routes, or services," the Supreme Court noted

that this language expresses "a broad pre-emptive purpose." *Id.* at 383.  Therefore, a law "relates

to" prices if it has a "connection with or reference to" that subject and may apply even where the

connection "is only indirect."  *See id.* at 384; *see also Hingson v. Pacific Southwest Airlines*, 743

F.2d 1408, 1415 (9th Cir. 1984); *Ill. Corp. Travel, Inc. v. Am. Airlines, Inc.*, 889 F.2d 751, 754

(7th Cir. 1989) (explaining "relating to" language "substantially increases the extent of

preemption."); *All World Professional Travel Services, Inc. v. American Airlines, Inc.*, 282 F.

Supp. 2d 1161, 1169 (C.D. Cal. 2003) ("A claim relates to airline prices if the claim expressly

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1   refers to price or has a significant economic effect upon price.").

2       A narrow exception was delineated in *Wolens* for state law claims that were "too tenuous,

3   remote, or peripheral" to be preempted by the ADA. *American Airlines, Inc. v. Wolens*, 513 U.S.

4   219, 223-224 (1995). In doing so, the Court found that while the ADA preempted the use of the

5   Illinois Consumer Fraud and Deceptive Practices Act ("ICFDPA") to challenge the airline's

6   retroactive devaluation of frequent flyer miles, the ADA did not preempt passengers' breach of

7   contract claims. The Court reasoned that "terms and conditions airlines offer and passengers

8   accept are not privately-ordered obligations" akin to a state's enactment, enforcement of any law

9   or "other provision having the *force and effect of the law*" (*emphasis added*). *Id.* at 228-229.

10  Thus, where a state law claim sought recovery from an airline's alleged breach of its "own, self-

11  imposed undertaking," recovery would not be preempted. *Id.*

12      Notably, the *Wolens* exception is narrow and breach of contract claims may still be

13  preempted under the ADA. In *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, (2014), the Supreme

14  Court elaborated that even where the state law claim was based on an airlines' breach of self-

15  imposed contractual obligations, recovery may still be preempted if the state law claim "sought

16  to enlarge the contractual obligations that the parties voluntarily adopt." *Ginsberg* at 276. The

17  underlying analysis regarding ADA preemption is the effect of the state law, regulation or

18  provision rather than its form as "the ADA's deregulatory aim can be undermined just as surely

19  by a state common-law rule as it can by a state statute or regulation." *Id.* at 283.

20      Here, all of Plaintiff's claims are premised upon her entitlement to a refund of her

21  canceled flight and therefore directly relate to ANA's rates and services. The very act of

22  refunding tickets is a service that ANA provides to its passengers in order to remain competitive

23  amongst its peers in the airline industry. It is also generally accepted that refund policies are

24  related to rates as such policies will typically impact the prices of tickets. *See Statland v.*

25  *American Airlines, Inc*. 998 F.2d 539, 542 (7th Cir. 1993) (where the Court "[thought] it obvious

26  that canceled ticket refunds relates to rates" and Statland's state law claims were therefore

27  "swept aside."); *see also Howell v. Alaska Airlines, Inc.* 99 Wash. App. 646, 652-653 (Wash.

28  App. 2000) (Alaska Airlines refusal to refund the price of a nonrefundable ticket was preempted

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1    by the ADA); *Buck v. American Airlines, Inc.,* 476 F.3d 29, 36 (1st Cir. 2007) (claim for refund

2    of taxes and fees added to airfare was preempted because it related to "price").

3            There is no exception for Plaintiff's breach of contract claim under *Wolens*.  As above,

4    where the purported breach of contract claim attempts to enlarge or enhance the parties' bargain

5    based on policies outside the agreement, it is preempted by the ADA.  *Ginsberg*, 572 U.S. at 276.

6    While ANA undertook a "self-imposed obligation" to provide refunds to Plaintiff pursuant to

7    Article 13 of its Conditions of Carriage, ANA included a provision that required Plaintiff to

8    provide evidence she was entitled to a refund prior to disbursing the funds for her ticket.  If

9    Plaintiff's breach of contract claim were allowed to proceed without an allegation that Plaintiff

10   requested a refund from ANA (which Plaintiff cannot make, as she has affirmatively alleged that

11   she never spoke to an ANA representative), the Court would be reading a requirement into the

12   contract that ANA could be required to provide *automatic* refunds to passengers without a

13   request.  Allowing for rescission would similarly permit passenger to rescind contracts any time

14   a flight was cancelled or delayed to circumvent refund policies they dislike.  This would

15   effectively expand ANA's obligations, directly impacting ANA's rates and services, frustrating

16   the ADA's goal of economic deregulation by interfering with the forces of competition.  *See*

17   *Watson v. United Airlines*, CIVIL 16-00400 LEK-KJM, 2017 WL 6060173 (D.Haw. Apr. 4,

18   2017) *5 (ADA preempted breach of contract claim and remedy of rescission, among other

19   claims, where plaintiff contended airline's checked baggage policy was not properly disclosed).

20           To the extent Plaintiff purportedly relies on the DOT Notice and FAQs to substantiate

21   this interpretation of ANA's refund policy, neither document was part of the Conditions of

22   Carriage that Plaintiff entered into when she purchased her tickets in November 2019.  Even if

23   they were, neither document contains guidelines that require ANA to provide refunds

24   *automatically* and without substantiation.  Furthermore, the FAQs explicitly state that both the

25   Notice and FAQs are meant only to provide guidance and do not have the "force and effect of

26   law."  Plaintiff's breach of contract claim mischaracterizes the DOT's guidance that the Notice

27   and FAQs are explicitly "not meant to bind the regulated authorities in any way" as plenary

28   authority to expand ANA's self-imposed undertakings under its Conditions of Carriage to require

automatic refunds.

Taken together, all of Plaintiffs' claims relate to ANA's rates and services.  Therefore, Plaintiff's claims are completely preempted by the ADA.  Plaintiff has failed to state any claim for relief, and the Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**B.      Plaintiff Has Failed to Plead That She Satisfied a Mandatory Condition Precedent to Receipt of a Refund**

As separate and independent basis for dismissal of the FAC, Plaintiff fails to plead facts sufficient to state a claim for relief.  As alleged in the FAC, ANA enters into contracts with its passengers through its Conditions of Carriage  (FAC, ECF No. 15, ¶ 37).  This express contract includes a condition precedent to ANA's disbursement of a refund that was artfully omitted from the original Complaint and the FAC, namely, the requirement that the passenger provide evidence that she is entitlement to a refund.  Without pleading that she satisfied this condition precedent, Plaintiff fails to state a claim for breach of contract that warrants relief.

Under California law, a condition precedent is one "which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed."  CAL. CIV. CODE § 1436 (West 2020).  Courts will honor such conditions where the language of the contract clearly requires such a construction.  *See Helzel v. Superior Court,* 123 Cal. App. 3d 652, 633 (Cal. Ct. App. 1981).  Where such conditions are deemed to be present, it is "elementary a plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused performance."  *Consolidated World Investments Inc. v. Lido Preferred Ltd.,* 9 Cal. App.4th 373, 380 (Cal. Ct. App. 1992).

The condition precedent to ANA's disbursement of a refund is stated clearly under Article 13(B)(1) of the Conditions of Carriage: "ANA will make a refund to the person named in a Ticket or, to the person who purchased the Ticket *upon presentation to ANA of satisfactory evidence to prove that he/she is entitled by these Conditions of Carriage to such refund."* (*emphasis added).*  The language of this condition is clear and states unequivocally that ANA will not provide a refund without a passenger's submission of satisfactory evidence.  Plaintiff has failed to allege any facts to indicate that she fulfilled her own contractual obligations by

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1  providing evidence to ANA that would enable it to process Plaintiff's refund.  Instead, Plaintiff

2  omits this portion of the Conditions of Carriage from her allegations and fails to address the

3  condition.  ANA is not obligated under the Conditions of Carriage to provide a refund to Plaintiff

4  until Plaintiff has performed the condition precedent and the requisite evidence is received by

5  ANA.  Therefore, Plaintiff has failed to state a claim for breach of contract.

6       To the extent that Plaintiff contends that ANA owed an extra-contractual obligation to

7  Plaintiff to provide Plaintiff a refund under DOT Notice and FAQs pursuant to the incorporation

8  of both authorities under Article 8 and 18 of its Conditions of Carriage, the DOT specifically

9  noted its guidelines were "not meant to bind the regulated entities in any way."  Regardless,

10  Plaintiff has not pled any facts to suggest that either document required ANA to provide

11  automatic refunds as soon as flights were canceled.  Similarly, though Plaintiff alleged

12  "provisions of the Code of Federal Regulations…cited explicitly in the DOT Second Notice"

13  mandated air carriers provide prompt refunds, the only cited regulation regarding air carrier's

14  obligations, 14 CFR §259.5(b)(5),  states that prompt refunds must be provided "after receiving a

15  complete refund request."  (FAC, ECF No. 15, ¶ 5).  Neither the DOT guidance nor the Code of

16  Federal Regulations require refunds to be issued without receiving a request for a refund or

17  documentation from the passenger evidencing their ticket purchase.  As such, Plaintiff has failed

18  to state a claim for breach of contract claim premised upon ANA's Conditions of Carriage or

19  allegedly imputed contractual duties from the DOT Notice and FAQs.

20      **C.**    **Plaintiff Is Not Entitled to the Remedy of Rescission As a Matter of Law**

21       Rescission is a restitutionary remedy available as an alternative to an action for damages

22  that restores both parties to their statuses prior to entering the contract where there has been

23  repudiation or a material breach of a contract.  *See Ambassador Hotel Co., Ltd. v. Wei-Chuan*

24  *Investment,* 189 F.3d 1017, 1031 (9th Cir. 1999); *see also Alder v. Drudis,* 30 Cal.2d 372, 383

25  (Cal. 1947).  The grounds for rescission are set out in California Civil Code §1689 and include,

26  among others, if the contract is unlawful and the parties are not equally at fault or if the

27  consideration for the obligation of the rescinding party: (1) fails, in whole or in part through the

28  fault of the other party, (2) becomes entirely void, (3) fails in a material respect from any cause.

- 16 -

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

CAL. CIV. CODE § 1689 (b)(2)-(7) (West 2020).  Notably, failure of consideration is based not on facts existing at the time the mutual promises were bargained for, but on a fact or contingency that occurs sometime after the contract was made which results in material failure of performance by one party.  *Taliaferro v. Davis,* 216 Cal.App.2d 398, 411 (1st Dist 1963).  In this way, it is similar to the doctrine of commercial frustration, and typically occurs when a supervening event totally or nearly totally destroys the value of counter-performance in a contract.  *Lloyd v. Murphy,* 25 Cal.2d 48, 53-54 (Cal. 1944).  Where the parties have contracted with reference to the frustrating event or have contemplated the risks arising from it, they may not invoke the doctrine of frustration to escape their obligations.  *Id.* at 55; *see also Glenn R. Sewell Sheet Metal, Inc. v. Loverde,* 70 Cal.2d 666, 676 (Cal. 1969).

Here, Plaintiff has alleged that rescission is warranted because ANA failed in consideration for her obligation, payment of her fare, when ANA cancelled and "otherwise did not provide the flight."  (FAC, ECF No. 15, ¶ 50).  This allegation narrowly defines ANA's consideration for Plaintiff's fare as the ticketed flight rather than as the *promise* of the ticketed flight subject to the terms of its Conditions of Carriage in an attempt to circumvent Plaintiff's obligations under ANA's refund policy.  As such, Plaintiff is not entitled to the remedy of rescission.

### 1.  ANA's Cancellation of Plaintiff's Return Flight Does Not Constitute Failure of Consideration

"A failure of consideration is the failure to execute a promise, the performance of which has been exchanged for performance by another party."  *FPI Development, Inc. v. Nakashima*, 231 Cal.App.3d 367, 398 (1991).  Here, ANA's consideration in exchange for Plaintiff's fare was the promise of carriage in accordance with its Conditions of Carriage.  In response to the global pandemic, ANA "suspended service" on certain international routes, including Plaintiff's return flight.  (FAC, ECF No. 15, ¶ 8).  However, ANA did not, at any time, indicate it would not perform its obligations under the Conditions of Carriage to provide alternative transportation or a refund.  The opposite is true: in accordance with Article 12 of its Conditions of Carriage, which anticipates the occurrence of cancellation due to "any fact beyond ANA's control," and Article 13, which outlines the criteria for involuntary refunds, ANA has issued at least 78,770

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

refunds for tickets issued in the United States to passengers for flights canceled due to the pandemic.  (Ito Decl. ¶ 29).

At most, ANA's failure to provide a refund to Plaintiff could be characterized as a delay in performance contingent on Plaintiff's performance of the condition precedent, *i.e.*, submission of proof of her fare under Article 13(B).  Unless the contract declares time to be of the essence, delay in performance is not a material failure of consideration as performance within a reasonable time is sufficient.  *See* CAL. CIV. CODE § 1657 (West 2020); *Baypoint Mortgage Corp. v. Crest Premium Real Estate etc. Trust*, 168 Cal.App.3d 818, 825-826 (2d Dist. 1985).  The FAC does not allege that the Conditions of Carriage indicate timing is of the essence for refunds.  Furthermore, provided Plaintiff did not perform her obligations by following Article 13(B), ANA's performance within a reasonable time under CAL. CIV. CODE § 1657 is excused until Plaintiff's submission of proof of fare.  *City of Stockton v. Stockton Plaza Corp.*, 261 Cal.App.2d 639 (1968).  Plaintiff is therefore not entitled to rescission for any alleged delay in performance by ANA.

### 2.    Plaintiff Cannot Contravene Express Terms of ANA's Conditions of Carriage by Attempting to Rescind the Contract

Anticipating various reasons that might warrant cancellation of flights, ANA, like other air carriers, includes provisions that list such situations and passengers' remedies in such an event.  (*See* Conditions of Carriage Article 12 and Article 13, Exhibit B to Ito Decl.).  This is, in part, to avoid intervening events from frustrating the purpose of the contract and discharging parties from their respective obligations.  It is settled that if parties have contracted with reference to contemplated risks, they may not invoke the doctrine of frustration to escape their obligations.  *Gold v. Salem Lutheran Home Ass'n of Bay Cities,* 53 Cal.2d 289 (1959).  Allowing Plaintiff to rescind the contract effectively bars ANA from enforcing contractual terms ANA specifically included contemplating the risk of intervening events.  Indeed, other jurisdictions have considered claims for rescission based upon flight cancellation "incomprehensible."  *See Egan v. Kollsman Instrument Corp.*, 253 N.Y.S.2d 679, 681 (1964) (where airline's ticket contained rules that provided absolute right to make cancellations due to weather conditions, plaintiff's argument that airline nonetheless breached the agreement and therefore plaintiff was

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1    entitled to refund was nonsensical).

2        There has been no refusal or failure on ANA's part to perform under its Conditions of

3    Carriage and provide a refund.  ANA has no obligation under the contract to provide Plaintiff

4    with a refund unless and until Plaintiff performs the condition precedent and submitted proof of

5    her damages pursuant to Article 13(B).  The FAC has included no facts that indicate Plaintiff has

6    done so.  In essence, the rescission claim is Plaintiff's misguided attempt to circumvent her

7    obligations under the Conditions of Carriage. This is an inappropriate attempt to rescind the

8    contract.

9            **3.    The FAC Pleads No Facts Substantiating Its Claim that ANA's
                     Conditions of Carriage was Rendered Unlawful**

10       Plaintiff alternatively argues that ANA's consideration failed pursuant to § 1689(b)(7) of

11   the Civil Code because it was "unlawful pursuant to government-ordered restrictions on travel."

12   (FAC, ECF No. 15, ¶ 51).  However, the FAC failed to state what government-ordered

13   restrictions on travel rendered ANA's operation of flights unlawful.  The FAC similarly failed to

14   indicate what government ordered restrictions on travel rendered ANA's consequent cancellation

15   of flights unlawful.  To the extent the FAC asserted any facts regarding government restrictions

16   or regulations, they are limited to the DOT's enforcement notice regarding air carrier's

17   obligations to provide refunds and the few sections of the Code of Federal Regulations regarding

18   the same.  (FAC, ECF No. 15 ¶¶ 3-5).  None of these are "government-ordered restrictions on

19   travel."  ANA, like many airlines, intentionally include particular provisions to address

20   cancellation of flights for various reasons including where necessary for public safety.  The FAC

21   included no facts that indicate why such provisions might be considered unlawful or why

22   cancellation of flights for such reasons would be deemed unlawful.  Based on the foregoing,

23   even if Plaintiff's FAC is not dismissed for lack of subject matter jurisdiction or preemption by

24   the ADA, Plaintiff has failed to plead sufficient facts to substantiate any of the alleged claims

25   against ANA and the FAC should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of

26   Civil Procedure.

27   / /

28   / /

Condon & Forsyth LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

4.    **Plaintiff Cannot Recover Both Damages And a Restitutionary Remedy For the Same Alleged Injury**

When rescission is merely an assertion by the injured party that the other has committed a vital breach that excuses himself from further performance, Plaintiff has the option of: (1) making the identical assertions and seeking damages *instead of* restitution or (2) seek damages or restitution *in the alternative. See Crofoot Lumber Inc. v. Thompson,* 163 Cal.App.2d 324, 332 (1958).  Here, Plaintiff inappropriately alleges damages under breach of contract *in addition to* a restitutionary remedy in the form of rescission.  (FAC, ECF No. 15, Prayer for Relief ¶¶ (b), (d)). Therefore, in addition to the FAC's failure to state facts sufficient to state a claim for rescission, Plaintiff is estopped from simultaneously seeking both causes of action pursuant to the doctrine election of remedies.

### III.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER ANA PURSUANT TO RULE 12(b)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Personal jurisdiction refers to the court's power to render judgment that either commands defendant's obedience or imposes obligations on the defendant that will be enforced by other courts.  *See Burnham v. Sup. Ct.*, 495 U.S. 604, 609-610 (1990).  The primary concern in assessing personal jurisdiction is the burden on the defendant, and it necessitates consideration of both the practical issues imposed on defendant to litigate in the forum as well as the submission of defendant to "the coercive power of a State that may have little legitimate interest in the claims in question."  *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County,* 137 S. Ct. 1773, 1780 (2017).

Federal courts ordinarily follow state law in determining the bounds of their jurisdiction and California's long-arm statute permits California state courts to exercise personal jurisdiction on any basis not inconsistent with the California or United States Constitution.  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  Following *International Shoe,* where a plaintiff sought to establish personal jurisdiction over a foreign corporation, the plaintiff could establish either specific jurisdiction or general jurisdiction.  *See International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement et. al.,* 326 U.S. 310, 318 (1945).  Specific jurisdiction is established where the action arises out of or relates to defendant corporation's

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1    contacts with the forum whereas general jurisdiction is established in the corporation's domicile

2    or any forum in which the corporation "is fairly regarded as at home." *Bristol-Myers*, 137 S.Ct.

3    at 1780.  A court with general jurisdiction may hear any claim against the defendant, even if all

4    the incidents underlying the claim occurred in a different state; however, only a limited set of

5    affiliations with a forum renders a defendant amenable to general jurisdiction in the state.  *Id.*

6         Plaintiff bears the burden of proof on the necessary jurisdictional facts and must establish

7    a prima facie case; then, the burden shifts to defendant to demonstrate that exercise of personal

8    jurisdiction would not be reasonable.  *In re Western States Wholesale Natural Gas Antitrust*

9    *Litigation*, 715 F.3d 716, 741 (9th Cir. 2013).  A prima facie showing requires Plaintiff to

10   produce admissible evidence which, if believed would be sufficient to establish personal

11   jurisdiction.  *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd*., 328 F.3d 1122,

12   1129 (9th Cir. 2003).  Where a Rule 12(b)(2) motion challenges the facts supporting plaintiff's

13   theory of jurisdiction, the motion must be decided on the basis of competent evidence, including

14   declarations.  *Data Disc, Inc. v. Systems Tech, Assocs. Inc.,* 557 F.2d 1280, 12 89 (9th Cir.

15   1977).

16        **A.    Plaintiff's FAC Fails to Allege Any Facts Establishing Specific Jurisdiction
             over ANA in California**

17        The Ninth Circuit utilizes a three-part test to determine whether there is specific

18   jurisdiction over a claim: (1) the non-resident defendant must purposefully direct his activities or

19   consummate some transaction with the forum or resident thereof or perform an act by which he

20   purposefully avails himself of the privilege of conducting activities in the forum; (2) the claim

21   must arise out of or result from defendant's forum-related activities and (3) exercise of

22   jurisdiction must comport with fair play and substantial justice.  *Freestream Aircraft Ltd. v. Aero*

23   *Law Group*, 905 F.3d 597 (9th Cir. 2018).  The purposeful availment prong of the test requires a

24   qualitative evaluation of the defendant's contact with the forum state in order to determine

25   whether defendant's conduct and connection with the forum State are such that defendant should

26   reasonably anticipate being hauled into court there. *World–Wide Volkswagen Corp. v. Woodson,*

27   444 U.S. 286, 297 (1980).  The purposeful availment requirement is met if the defendant

28   "performed some type of affirmative conduct which allows or promotes the transaction of

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

1  business within the forum state." *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir.1990)

2      Here, though Plaintiff argues that ANA purposefully availed itself in this forum by

3  maintaining a California office and operating routes in and out of the state, the FAC fails to

4  allege that her claim arose or resulted from ANA's conduct in California.  (FAC, ECF No. 15, ¶

5  22).  As set forth above, Plaintiff did not allege that she conducted any business with ANA in

6  California and affirmatively alleged that she purchased her tickets from ASAP, not ANA.  (FAC,

7  ECF No. 15, ¶¶ 9, 19).  Plaintiff did not identify the location of ASAP or allege that any business

8  was conducted between ANA and ASAP in California. The only allegation alluding to ANA's

9  conduct in California giving rise to Plaintiff's claim is the fact her cancelled return flight was to

10  be operated from Tokyo to San Francisco.  (FAC, ECF No. 15, ¶ 8).  However, any connection

11  between Plaintiff's claim and ANA's conduct is too attenuated to confer specific personal

12  jurisdiction.  Plaintiff's claim did not result from ANA's operation of flights, but rather from

13  ANA's alleged refusal to provide a refund.  No refund-related activity was alleged to have

14  occurred in California.  The allegations in the FAC are insufficient to establish that this Court

15  has personal jurisdiction to adjudicate Plaintiff's claims against ANA.

16      Furthermore, even if Plaintiff could establish specific personal jurisdiction over ANA for

17  her claim based on ANA's interactions with her in California, this would not be sufficient to

18  establish specific jurisdiction over ANA for class members whose claims have no connection to

19  California.  A defendant's relationship with a resident plaintiff in the forum State, standing

20  alone, is an insufficient basis to establish similar claims brought by non-resident plaintiffs.

21  *Bristol-Myers,* 137 S. Ct. at 1781.

22      In *Bristol-Myers,* more than 600 plaintiffs, most of whom were not California residents,

23  filed state-law claims based on injuries allegedly caused by Defendant Bristol-Meyers Squibb's

24  ("BMS") drug Plavix.  *Id.* at 1778.  Personal jurisdiction was established in California over non-

25  resident BMS due to BMS' extensive longstanding business activities in California relating to

26  Plavix, including, in particular, sale of 196 million Plavix pills between 1998 and 2006 and

27  nearly $1 billion worth of Plavix between 2006 and 2012 in California.  *Id.*  Nevertheless,

28  following review by the U.S. Supreme Court, the non-resident actions on the same claims were

1    dismissed for lack of personal jurisdiction. *Id. at* 1783. In its decision, the Court noted that non-

2    residents were not prescribed Plavix in California, did not purchase it there and were not injured

3    by it there; therefore, the requisite link between the forum and the specific claims was missing.

4    *Id.* at 1781. Similarly here, members of the class that reside outside of California will have

5    purchased ANA tickets from different online vendors outside of California and may or may not

6    have interacted with ANA representatives outside of California, but if none of these actions were

7    performed within California, there is no specific jurisdiction over ANA in California for those

8    passengers.

9         **B.**     **ANA Is Domiciled and Maintains Its Principal Place of Business in Japan and Plaintiff has Failed to Establish that ANA's Contacts in California are**

10               **Pervasive Enough to Establish General Jurisdiction**

11        In *Daimler A.G. v. Bauman*, 571 U.S. 117, 118 (2014), the Supreme Court held that

12   although the exceptional case may exist, the "paradigm all-purpose forums" for general

13   jurisdiction are a corporation's place of incorporation and principal place of business. In

14   *Daimler*, the Supreme Court rejected the plaintiffs' argument that general jurisdiction is

15   appropriate whenever a corporation "engages in a substantial, continuous, and systematic course

16   of business" in a state. *Id.* The *Daimler* Court emphasized that the "paradigm" fora for general

17   jurisdiction are a corporation's place of incorporation and principal place of business. *Id.* Only in

18   an "exceptional case" will general jurisdiction be available elsewhere. *Id.* at fn. 19.

19        Post-*Daimler* cases confirm that an airline is not subject to general jurisdiction in

20   jurisdictions where the airline is not incorporated and does not maintain its principal place of

21   business. In *Banks v. American Airlines*, plaintiff, a flight attendant, brought action against her

22   employer, American Airlines ("American"), in California alleging racial discrimination. *Banks*

23   *v. American Airlines*, 2019 WL 5579479 (N.D. Cal. 2019). American was neither incorporated

24   nor had its principal place of business in California and the *Banks* court was not persuaded that

25   there was general jurisdiction simply because American had a "huge hub" in California. *Id. at 3.*

26        Similarly in *Agher v. Envoy Air Inc.*, plaintiff sued American for wrongful termination

27   and the court held that plaintiff had not met its burden of showing general jurisdiction despite

28   allegations that "16% of American's flights involve departures from or arrivals in California"

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030

and approximately 8,500 American employees were based in California. *Agher v. Envoy Air Inc.,* 2018 WL 6444888 at 1 (C.D. Cal. 2018). Neither allegation was sufficient to demonstrate American was "at home" in the State. *Id.*

ANA is organized under the laws of Japan and maintains its principal place of business in Japan. (Ito Decl. ¶ 4). While ANA operates flights in and out of California, these routes represent under three percent of ANA's business. (Ito Decl. ¶ 6). Similarly, although ANA has two offices in California with approximately 240 employees, this is nominal compared to the many offices and employees ANA manages worldwide. (Ito Decl. ¶¶ 7-8). Accordingly, ANA respectfully requests the Court to dismiss the action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, as Plaintiff has failed to establish that this Court may exercise personal jurisdiction over ANA.

## **CONCLUSION**

For the foregoing reasons, Defendant All Nippon Airways respectfully requests the Court grant its motion and dismiss Plaintiff's Complaint in its entirety.

Dated: August 17, 2020                    CONDON & FORSYTH LLP


                                          By: /s/ Scott D. Cunningham
                                              SCOTT D. CUNNINGHAM
                                              JENNIFER J. JOHNSTON
                                              IVY L. NOWINSKI
                                              GRACE M. LAU
                                              Attorneys for Defendant
                                              ALL NIPPON AIRWAYS CO., LTD.

LAOFFICE 246937v.1

CONDON & FORSYTH LLP
1901 Avenue of the Stars, Suite 850
Los Angeles, California 90067-6010
Telephone: (310) 557-2030