**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ASHLEY BUGARIN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ALL NIPPON AIRWAYS CO., LTD.,<br><br>　　　　Defendant. | Case No.  20-cv-03341-BLF<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION; AND GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>[Re:  ECF 35] |

In this putative class action, Plaintiff Ashley Bugarin ("Bugarin") seeks to represent a nationwide class of persons who did not receive refunds when their flights on Defendant All Nippon Airways Co., Ltd. ("ANA") were cancelled or rescheduled as a result of the COVID-19 pandemic.  The operative second amended complaint ("SAC") asserts a single claim for breach contract, alleging that ANA's Conditions of Carriage ("COC")[1] obligate ANA to refund the ticket price for a cancelled or rescheduled flight.  ANA moves to compel arbitration or, in the alternative, to dismiss the SAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

For the reasons discussed below, the motion to compel arbitration is DENIED and the motion to dismiss is GRANTED WITH LEAVE TO AMEND.

---

[1] Bugarin refers to this document as the "Contract of Carriage" in her SAC, although the document itself is titled "Conditions of Carriage."  Both parties use the term "Conditions of Carriage" in their briefing on the current motion.  The Court uses the term "Conditions of Carriage" or "COC."

## I. BACKGROUND

Bugarin filed this action on May 15, 2020 and thereafter filed a first amended complaint ("FAC") as of right alleging claims for breach of contract and rescission. *See* Compl., ECF 1; FAC, ECF 15. The Court granted ANA's motion to dismiss the FAC under Rule 12(b)(6) with leave to amend the contract claim only. *See* Order Granting in Part and Denying in Part Motion to Dismiss ("Prior Order"), ECF 31. The Court found that the rescission claim was preempted by the Airline Deregulation Act, 49 U.S.C. § 41713, and thus that leave to amend that claim would be futile. *See id*. Bugarin filed the operative SAC on February 5, 2021, reasserting only the contract claim. *See* SAC, ECF 32.

Bugarin alleges that in November 2019, she purchased tickets from a third-party online vendor, asaptickets.com ("ASAP"), for two round-trip flights to Japan on ANA. SAC ¶ 25. The outbound flight from San Jose, California to Tokyo, Japan was scheduled for March 23, 2020, and the return flight from Tokyo to San Francisco, California was scheduled for April 8, 2020. *Id*. Bugarin paid approximately $805 per round-trip ticket for a total of $1609.70. *Id*. The return flight was cancelled due to the COVID-19 pandemic. *Id*.

When Bugarin contacted ASAP to obtain a refund for the cancelled return flight, she was informed that she would have to pay $200 per ticket to obtain a refund. SAC ¶ 18. Instead of paying the $200 fee, Bugarin decided to seek a refund directly from ANA. *Id*. ¶ 19. According to Bugarin, ANA was contractually obligated to provide her with a refund for the cancelled flight under its COC. SAC ¶ 12 & Exh. A. Bugarin claims that ANA breached its COC by failing to provide her with a refund. SAC ¶ 13.

Section 13 of the COC, "Refunds," states in relevant part that ANA will provide a refund when a passenger is prevented from using a ticket because "ANA cancels a flight, [or] fails to operate a flight reasonably according to the schedule." COC § 13(A), (C). "ANA will make a refund to the person named in a Ticket or, to the person who purchased the Ticket upon presentation to ANA of satisfactory evidence to prove that he/she is entitled by these Conditions of Carriage to such refund." COC § 13(B). The Court previously found that it "appears from the plain language of the COC that a request for refund, supported by evidence sufficient to prove

entitlement to a refund, is a condition precedent to obtaining a refund." Prior Order at 22. The Court concluded in the last round of motion practice that the FAC alleged neither satisfaction of the condition precedent nor excuse for nonperformance. *See id.* The Court granted Bugarin leave to amend to add facts showing either that § 13(B) is not a condition precedent or that Bugarin's nonperformance of the condition precedent is excused.

In the SAC, Bugarin seeks to show that her nonperformance of the condition precedent is excused. Confusingly, she alleges that *ASAP's* $200 processing fee for obtaining a refund "is direct frustration of the condition precedent" in *ANA's* COC. SAC ¶ 18. She also alleges that ANA "specifically prevented Plaintiff and Class members from fulfilling the condition precedent by leaving customers seeking a refund on hold for long periods of time, dropping calls when they did get through, and otherwise creating bottleneck to avoid processing refunds as required" under the COC. SAC ¶ 17. Bugarin alleges that she "made more than one call" to ANA but had difficulty understanding how to select the proper option to reach a live representative because ANA's recorded message was partially in Japanese. SAC ¶ 19. Once Bugarin selected the proper option, she allegedly was placed on hold for 30-45 minutes, after which her calls were dropped before she could speak to an ANA representative. SAC ¶ 20. Bugarin asserts that "Defendant's frustration of the condition precedent was part of its policy to avoid issuing a refund to Plaintiff and Class members." SAC ¶ 23.

Bugarin, a citizen and resident of California, sues ANA for breach of the COC on behalf of herself and the following putative nationwide class: "All persons in the United States who purchased tickets for travel on an All Nippon flight scheduled to operate to, from, or within the United States whose flights were cancelled or were subject to a significant schedule change and not refunded." SAC ¶ 30. She also seeks to represent a subclass of persons who purchased tickets in California. SAC ¶ 31.

**II. MOTION TO COMPEL ARBITRATION**

ANA moves to compel arbitration of the SAC. While ANA's COC do not include an arbitration provision, ANA asserts that it may enforce an arbitration provision contained in ASAP's terms and conditions under the doctrine of equitable estoppel.

3

### A. Legal Standard

The Federal Arbitration Act ("FAA") applies to arbitration agreements affecting interstate commerce. 9 U.S.C. §§ 1 *et seq*. When it applies, the FAA preempts state law rules that conflict with its provisions, as well as "state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341-43 (2011). In deciding whether to compel arbitration, a court generally must determine two issues: (1) whether there is an agreement to arbitrate, and (2) whether the agreement covers the dispute. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. *See Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017).

"The right to compel arbitration stems from a contractual right." *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993). "That contractual right may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Id*. A nonparty may "otherwise possess the right to compel arbitration" when the nonparty is a third-party beneficiary of the contract, a successor in interest to the contract, or an agent of a signatory. *Id*. at 745-47.

Under certain circumstances, a nonparty may compel arbitration under the doctrine of equitable estoppel. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013). "Where a nonsignatory seeks to enforce an arbitration clause, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *Id*. at 1128-29 (internal quotation marks and citations omitted).

4

**B.      Discussion**

ANA argues that the doctrine of equitable estoppel applies here because Bugarin relies on ASAP's conduct in asserting her contract claim against ANA, and Bugarin's contract claim against ANA is intertwined with her agreement with ASAP.  In opposition, Bugarin contends that ANA has not established that she entered into an arbitration agreement with ASAP.  She also contends that even if she did enter into an arbitration agreement with ASAP, ANA cannot enforce that agreement for four reasons.  First, Bugarin argues that ANA waived its right to move to compel arbitration.  Second, she contends that it would be inappropriate to allow ANA to compel arbitration based on a provision in ASAP's terms and conditions, since federal regulations bar ANA from including an arbitration provision in its COC.  Third, she asserts that ANA is not a third-party beneficiary to the arbitration agreement.  And fourth, she argues that ANA cannot invoke ASAP's arbitration provision under the doctrine of equitable estoppel.

### 1.      ANA has Shown the Existence of an Arbitration Agreement

As the party seeking to compel arbitration, ANA has the burden of proving the existence of an arbitration agreement by a preponderance of the evidence.  *See Norcia*, 845 F.3d at 1283.  ANA submits screenshots of ASAP's website showing that users must check a box agreeing to ASAP's terms and conditions, including an arbitration provision, in order to purchase airline tickets.  *See* Lau Decl. Exhs. 3-4, ECF 35-1; Vazan Decl. Exhs. 3-4, ECF 35-2.  Bugarin points out that the screenshots submitted by ANA are from 2021, and she argues that ANA has not established that the screenshots depict what she saw when she booked her flights in 2019.  She cites *Maree v. Deutsche Lufthansa AG*, No. SACV 20-885-MWF (MRWx), 2020 WL 6018806, at *3 (C.D. Cal. Oct. 7, 2020), for the proposition that "it would be improper to rule on the existence of an arbitration agreement without first determining, as a factual matter, what the website looked like on the relevant date."

Bugarin's reliance on *Maree* is misplaced.  In that case, the plaintiff purchased tickets on the defendant airline, Lufthansa, through the website of third party Expedia.  Lufthansa sought to compel arbitration of the plaintiff's claims pursuant to an arbitration provision contained on the Expedia website.  However, while Lufthansa submitted a screenshot of the checkout flow for

5

purchasing airline tickets on Expedia, the screenshot was undated and it was unclear whether it was an accurate representation of what the plaintiff saw when she bought her flights. *See Maree*, 2020 WL 6018806, at *2-3. At the hearing, Lufthansa represented that it was in the process of obtaining a declaration from Expedia to confirm that the checkout flow depicted in the screenshot was the same as at the time the plaintiff bough her tickets. *See id*. at *2. The district court deferred consideration of the defendant's motion to compel arbitration pending the defendant's submission of "information that verifies the website's design and content as it appeared in January 2020," when the plaintiff booked her flight. *Maree*, 2020 WL 6018806, at *3.

In the present case, ANA has submitted information verifying the design and content of ASAP's website as it appeared in November 2019, when Bugarin booked her flights. ANA submits the declaration of Peter Vazan, a representative of International Travel Network, LLC, which operates the ASAP website. *See* Vazan Decl. ¶¶ 2-3, ECF 35-2. Mr. Vazan describes the process by which an individual can use the ASAP website to purchase an airline ticket. *See id*. ¶¶ 7-8. "[U]sers must check a box that indicates that he or she has read, understood and accepted specific terms and policies including present Terms and Conditions." *Id*. ¶ 7. "Website users can click through an embedded hyperlink, which is displayed bold, underlined and in blue, to fully review the Terms and Conditions." *Id*. "Users cannot proceed with payment without affirmatively checking this box." *Id*. Mr. Vazan states that the screen flow on the ASAP website, the booking screen, and the terms and conditions have not changed in any material respect since Bugarin purchased her airline tickets in November 2019. *See id*. ¶¶ 7-10.

One of ANA's attorneys, Grace Lau, submits a declaration stating that in February 2021, she used the ASAP website to purchase an airline ticket from Los Angeles, California to Tokyo, Japan, and that she had to agree to ASAP's terms and conditions as part of the purchase process. *See* Lau Decl. ¶ 7, ECF 35-1. Those terms and conditions include an arbitration provision stating as follows: "The exclusive means of resolving any dispute or claim arising out of or Relating to this Agreement) including any alleged breach thereof), the Service, or the Website shall be BINDING ARBITRATION administered by the American Arbitration Association." *Id*. ¶¶ 7-8 & Exh. 4.

This evidence is sufficient to show by a preponderance of the evidence that Bugarin entered into an arbitration agreement with ASAP when she purchased her flights.

### 2. ANA Did Not Waive the Right to Move to Compel Arbitration

Bugarin contends that even if she did enter into an arbitration agreement with ASAP, ANA has waived its right to move to compel arbitration by waiting almost a year after commencement of the action to file its motion. ANA argues that its motion to compel arbitration is based on allegations that appeared for the first time in the SAC, and that its motion was filed only a month after the SAC.

"The right to arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). "Because waiver of the right to arbitration is disfavored, any party arguing waiver of arbitration bears a heavy burden of proof." *Id*. (internal quotation marks and citation omitted). "As such, [a] party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id*. (internal quotation marks and citation omitted).

ANA's motion to compel arbitration under the doctrine of equitable estoppel is based on new allegations in the SAC. Specifically, in the SAC Bugarin alleges for the first time that she sought a refund from ASAP, that ASAP informed her there would be a $200 charge per ticket for a refund, and that the $200 charge "is a direct frustration of the condition precedent" in ANA's COC. SAC ¶ 18. Based on these allegations, ANA contends it may compel arbitration under the doctrine of equitable estoppel, because Bugarin relies on ASAP's conduct in asserting her contract claim against ANA, and Bugarin's contract claim against ANA is intertwined with her agreement with ASAP. The SAC was filed on February 5, 2021, and ANA filed the present motion to compel arbitration on March 5, 2021. Under these circumstances, Bugarin cannot meet her heavy burden of proof to show waiver of ANA's right to move to compel arbitration.

### 3. Effect of 14 C.F.R. § 253.10

Bugarin asserts that federal regulations bar ANA from including an arbitration provision in its COC, and it would be inappropriate to allow ANA to end-run this restriction by allowing ANA

7

to enforce ASAP's arbitration provision. In particular, Bugarin relies on 14 C.F.R. § 253.10, which reads as follows:

> No carrier may impose any contract of carriage provision containing a choice-of-forum clause that attempts to preclude a passenger, or a person who purchases a ticket for air transportation on behalf of a passenger, from bringing a claim against a carrier in any court of competent jurisdiction, including a court within the jurisdiction of that passenger's residence in the United States (provided that the carrier does business within that jurisdiction).

14 C.F.R. § 253.10. ANA argues that § 253.10 speaks only to forum selection provisions, not arbitration provisions, and that in any event § 253.10 applies only to claims involving domestic flights and not claims involving international flights such as the one at issue in this case.

The parties cite competing district court cases in support of their positions. Bugarin relies on *Rudolph v. United Airlines Holdings, Inc.*, 519 F. Supp. 3d 438 (N.D. Ill. 2021), a putative class action against United Airlines for failure to refund travel fares for flights cancelled due to the COVID-19 pandemic. United moved to compel arbitration pursuant to an arbitration provision contained in the terms of use governing the website of third-party Expedia, which one of the named plaintiffs, Hansen, had used to purchase his airfare. Hansen used Expedia's website to purchase roundtrip tickets on United from Vancouver, British Columbia, to Liberia, Costa Rica, with connecting flights via Houston, Texas. *Id*. at 444. Expedia's arbitration provision stated that "[a]ny and all claims will be resolved by binding arbitration" with the exception of qualifying claims that could be resolved in small claims court. *Id*. at 445. The provision contained the following language: "This includes any Claims you assert against us, our subsidiaries, travel suppliers or any companies offering products or services through us (which are beneficiaries of this arbitration agreement)." *Id*.

The district court found that Expedia's arbitration provision was valid and enforceable with respect to disputes between Hansen and Expeida.com. *See Rudolph*, 519 F. Supp. 3d at 445. The court determined that the provision could not be enforced by United, however, in light of applicable Department of Transportation ("DOT") regulations. *See id.* at 446-447. The district court found that 14 C.F.R. § 253.10, set forth above, prohibited United from including an arbitration provision in its own COC. *See id.* United conceded as much, but argued that it

nonetheless could rely on Expedia's arbitration provision "because Section 253.10's plain language only prohibits restrictions by air carriers in their own contracts of carriage, not travel booking websites like Expedia in their agreements with customers." *Id*. at 447. The district court rejected United's argument, holding that "United should not be permitted to do indirectly what federal regulations prohibit it from doing directly, particularly given the regulation's purpose to provide protections to consumers." *Id.*

ANA relies *Capua v. Air Europa Lineas Aereas S.A. Inc.*, No. 20-CV-61438-RAR, 2021 WL 965500 (S.D. Fla. Mar. 15, 2021), in which the district court reached the opposite result on similar facts. *Capua* was a putative class action against Air Europa for failure to refund travel fares for flights cancelled due to the COVID-19 pandemic. The named plaintiff, Capua, used Expedia's website to purchase round trip tickets from Miami, Florida to Porto, Portugal on Air Europa. *See id*. at *1. Expedia's terms of use contained the same arbitration provision addressed by *Rudolph* and discussed above. *See id*. The district court held that Capua could enforce the arbitration provision as a third-party beneficiary, finding that Air Europa clearly qualified as one of the "travel suppliers or any companies offering products or services through us" that were intended "beneficiaries of this arbitration agreement." *Id*. at *6.

The *Capua* court found that § 253.10 did not prohibit the Air Europa from enforcing Expedia's arbitration provision. *See Capua*, 2021 WL 965500, at *8. The district court found that "[b]y its own terms, section 253.10 prohibits Air Europa from including an arbitration clause in its own contract of carriage." *Id*. However, the court concluded that "nothing in section 253.10 prohibits Air Europa from relying on an arbitration clause found in Expedia's TOU – an entirely separate and distinct contract." *Id*. The *Capua* court also determined that § 253.10 applies only to contracts of carriage for domestic flights, relying on DOT commentary in the Federal Register. *See id.* Because Capua purchased tickets for an international flight, the district court concluded that § 253.10 did not apply. *See id.* The *Capua* court acknowledged the *Rudolph* decision, but simply disagreed as to the applicability of § 253.10. *See id.* The *Capua* court stated that it was "troubled by the suggestion that a little-known DOT regulation could take precedence over the emphatic federal policy in favor of arbitral dispute resolution." *Id*. (internal quotation marks and

citation omitted).

Before discussing the differences between the *Rudolph* and *Capua* decisions, this Court notes that both courts determined that § 253.10 prohibits airlines from including arbitration provisions in their own conditions of carriage. *See Capua*, 2021 WL 965500, at *8 ("By its own terms, section 253.10 prohibits Air Europa from including an arbitration clause in its own contract of carriage."); *Rudolph*, 519 F. Supp. 3d at 446-47 ("United concedes that this regulation prohibits an airline from including an arbitration clause in its own Contract of Carriage."). This Court agrees with that determination. While § 253.10 prohibits a carrier from including in its COC a "choice-of-forum clause" that would preclude suit against the carrier "in any court of competent jurisdiction," an arbitration provision appears to fall within this prohibition, as it would preclude suit against the carrier in any court. 14 C.F.R. § 253.10. Accordingly, this Court finds unpersuasive ANA's argument that § 253.10 does not apply to arbitration provisions.

Turning to the conflicting holdings of *Rudolph* and *Capua*, this Court finds *Rudolph* to be more persuasive. In particular, this Court agrees with *Rudolph* that a carrier should not be allowed to avoid the restriction imposed by § 253.10 by seeking "to do indirectly what federal regulations prohibit it from doing directly." *Rudolph*, 519 F. Supp. 3d at 447. This Court declines to find that § 253.10 applies only to domestic flights, as did the *Capua* court, based on DOT commentary in the Federal Register. In this Court's view, there is no ambiguity in the language of § 253.10 that would give rise to a need to consider commentary to aid interpretation. Section § 253.10 states that "[n]o carrier" may include a certain type of clause in its conditions of carriage. Nothing in this language suggests that "[n]o carrier" means "[n]o carrier *of domestic flights*." "[W]here, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (quotation marks and citation omitted). Based on *Rudolph*, this Court finds that ANA may not enforce ASAP's arbitration provision.

### 4. Third-Party Beneficiary and Equitable Estoppel

Even if it were to conclude that § 253.10 does not bar ANA's enforcement of ASAP's arbitration provision, the Court would find that ANA lacks standing to enforce the provision here.

1    ANA contends that it may enforce ASAP's arbitration provision under the doctrine of equitable
2    estoppel. ANA does not argue that it has standing to enforce the arbitration provision as a third-
3    party beneficiary. The Court therefore does not reach Bugarin's argument that ANA cannot
4    proceed on a third-party beneficiary theory.

5    As discussed above, a non-party to an arbitration agreement may enforce the agreement "in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement." *Kramer*, 705 F.3d at 1128-29 (internal quotation marks and citations omitted). ANA seeks to enforce the ASAP arbitration agreement under the first of these circumstances. ANA relies heavily on paragraph 18 of the SAC, alleging that *ASAP's* $200 processing fee for obtaining a refund "is direct frustration of the condition precedent" in *ANA's* COC. SAC ¶ 18. ANA argues that because Bugarin is relying on her relationship with ASAP to show an essential element of her contract claim, ANA should be permitted to enforce ASAP's arbitration provision. At the hearing, Bugarin's counsel clarified that paragraph 18 was drafted in error, and that Bugarin is not asserting frustration of the condition precedent based on ASAP's conduct. Bugarin's counsel represented that the asserted frustration of the condition precedent is based solely on ANA's conduct. Based on that clarification, the Court finds that paragraph 18 of the SAC does not provide a basis for applying the doctrine of equitable estoppel.

At the hearing, counsel for ANA argued that although there are two separate contracts at issue, one between Bugarin and ASAP and one between Bugarin and ANA, the two contracts are intertwined because they apply to the same carriage. ANA's counsel cited *Ide v. Brit. Airways PLC*, No. 20-CV-3542 (JMF), 2021 WL 1164307 (S.D.N.Y. Mar. 26, 2021), in support of that argument. However, in *Ide* it was undisputed that the carrier had standing to enforce an arbitration agreement contained in Expedia's terms of service with respect to a passenger who purchased airfare through Expedia. *Ide* contains no discussion regarding the doctrine of equitable estoppel,

11

and it is not even clear from the decision whether equitable estoppel was the basis for the carrier's standing to enforce Expedia's arbitration provision rather than third-party beneficiary status. *See id.* at *3.

Bugarin relies on *Herrera v. Cathay Pac. Airways Ltd.*, No. 20-CV-03019-JCS, 2021 WL 2186214 (N.D. Cal. May 28, 2021), a putative class action in which the plaintiffs claimed that Cathay Pacific breached its conditions of carriage by failing to provide refunds for flights it cancelled due to the COVID-19 pandemic. Like Bugarin in the present case, the *Herrera* plaintiffs purchased their airline tickets through ASAP. *Id*. at *1. Cathay Pacific moved to compel arbitration, seeking to enforce ASAP's arbitration provision under the doctrine of equitable estoppel. *See id*. at *4-5. The court denied the motion, concluding that the plaintiffs' "breach of contract claim against Cathay Pacific is not based on any obligation found in the [ASAP] Terms and Conditions and therefore, the doctrine of equitable estoppel does not apply." *Id*. at *5. The *Herrera* court explained that the plaintiffs' contract claim was based on Cathay Pacific's obligations under its own conditions of carriage, and not on any obligation contained in ASAP's terms and conditions. *See id*. The court found that for those and other reasons, "fairness does not require that the Herreras' breach of contract claim against Cathay Pacific must be arbitrated." *Id*.

This Court likewise concludes that because Bugarin's contract claim against ANA is based solely on ANA's own COC, and not on any obligation found in ASAP's terms and conditions, equity does not require that the claim be subject to ASAP's arbitration provision.

ANA's motion to compel arbitration is DENIED.

### III.  MOTION TO DISMISS

In the event that the Court denies its motion to compel arbitration, ANA moves to dismiss the SAC under Rule 12(b)(6) for failure to state a claim.

####    A.  Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (internal quotation marks and citation omitted).

12

While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

When evaluating a Rule 12(b)(6) motion, the district court must consider the allegations of the complaint, documents incorporated into the complaint by reference, and matters which are subject to judicial notice. *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1063 (9th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B.     Discussion**

In its prior order, the Court found that a request for refund, supported by evidence sufficient to prove entitlement to a refund, is a condition precedent to obtaining a refund under ANA's COC. *See* Prior Order at 22. The FAC did not allege facts showing satisfaction of the condition precedent or excuse for nonperformance. *See id*. The Court granted Bugarin leave to amend to add facts showing either that § 13(B) is not a condition precedent or that Bugarin's nonperformance of the condition precedent is excused. *See id.*

In her SAC, Bugarin asserts that ANA prevented her from fulfilling the condition precedent to obtaining a refund under ANA's COC. *See* SAC ¶ 17. However, many of the facts supporting this assertion are not contained in the SAC itself, but rather in Bugarin's declaration that is attached to the SAC. *See* Bugarin Decl., Exh. B to SAC. For example, Bugarin states in her declaration that she "called All Nippon's customer service number (800-235-9262) up to thirty times over the span of several weeks in April 2020" in an attempt to request a refund. Bugarin Decl. ¶ 5. These details are not alleged in the SAC, which states only that Bugarin "made more than one call" to ANA. SAC ¶ 19.

While a "written instrument" attached as an exhibit to a complaint may be considered part of the complaint for all purposes under Federal Rule of Civil Procedure 10(c), documents that qualify as written instruments under the rule generally are limited to those "evidencing legal rights

13

or duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement." *DeMarco v. DepoTech Corp.*, 149 F. Supp. 2d 1212, 1220 (S.D. Cal. 2001). "In contrast, witness affidavits and other exhibits containing largely evidentiary material typically do not fall within Rule 10(c)'s category of written instruments." *Montgomery v. Buege*, No. CIV. 08-385 WBS KJM, 2009 WL 1034518, at *3 (E.D. Cal. Apr. 16, 2009) (internal quotation marks and citation omitted). The exception is when an affidavit forms the basis of the complaint, as in *Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994), where the plaintiff claimed that an agent's warrant affidavit contained deliberately false statements, rendering the resulting search of his premises unlawful under the Fourth Amendment. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Branch* as an example of circumstances in which an affidavit "forms the basis of the complaint" and thus properly may be attached as a pleading exhibit).

Here, Bugarin's declaration does not form the basis of her contract claim; "it is merely a piece of evidentiary matter that does not exist independently of the complaint." *DeMarco*, 149 F. Supp. 2d at 1220. Accordingly, the declaration cannot be considered as part of the SAC when evaluating ANA's motion to dismiss. *See Bowler v. Wells Fargo Bank, N.A.*, No. CV-19-05320-PHX-NVW, 2020 WL 4260505, at *10-11 (D. Ariz. July 24, 2020) (plaintiffs' declarations attached to their second amended complaint could not be considered in evaluating a Rule 12(b)(6) motion to dismiss). The facts alleged in the SAC itself are insufficient to show excuse for nonperformance of the condition precedent. The Court therefore has no choice but to grant the motion to dismiss. Viewing Bugarin's declaration as a proffer of facts that could be alleged, however, it appears that Bugarin could amend to cure this defect.

At the hearing, counsel for ANA pointed out that each round of pleading is costing ANA a great deal of money. Counsel argued persuasively that allowing further leave to amend, particularly to cure the very odd decision to include critical facts in a declaration attached to the SAC rather than in the SAC itself, is reaching the bounds of judicial economy and fairness. The Court agrees, but based on this record it will give Bugarin one final opportunity to amend her pleading to state a viable claim.

14

ANA's motion to dismiss the SAC therefore is GRANTED WITH LEAVE TO AMEND.

## IV. ORDER

(1) ANA's motion to compel arbitration is DENIED.

(2) ANA's motion to dismiss the SAC is GRANTED WITH LEAVE TO AMEND. Any amended pleading shall be filed by November 16, 2021. Leave to amend is limited to the deficiencies noted herein. No additional claims or parties may be added without leave of the Court.

(3) This order terminates ECF 35.

Dated: October 26, 2021

_____
BETH LABSON FREEMAN
United States District Judge